UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DUANE ZIEMBA

     v.                               CASE NO. 3:11cv974(SRU)

ANN LYNCH, ET AL.

## RULING ON DEFENDANTS' MOTION TO DISMISS

The plaintiff, Duane Ziemba, formerly incarcerated at Corrigan Correctional Institution, filed this action *pro se* under 42 U.S.C. §§ 1983 and 1986 against Assistant Attorney General Ann E. Lynch, Warden Anthony Colletti, Acting Commissioner Brian K. Murphy, Deputy Commissioner Mark Strange, District Administrator Michael Lajoie, Captain Robert Judd, Lieutenants Marilyn Butler, Fred White and Christian Leva, Correctional Officers Jeffrey Wing, Christopher Hanney, David Yother, William Delaney, Peter Gingras, Nathan Cowser, James Turner, Thomas Fortin, Santo Terranova, Michael Bigelow, Bill Bessette, Joseph Iozzia, Joshua Koniecko and Todd LaPlace and Nurses Chuck Evans and Ramerez in their individual capacities. On November 21, 2011, the court concluded that the First, Eighth and Fourteenth Amendment claims as well as state law claims should proceed against the defendants. Defendants Lynch, Murphy, Strange, Lajoie and Colletti move to dismiss the claims against them. For the reasons set forth below, the motion is granted in part and denied in part.

## I.  Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court

considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim.  *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).  Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief.  Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).  Even under this standard, however, the court liberally construes a *pro se* complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).  In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

## II.    Facts[1]

The plaintiff alleges that on July 14, 2009 in a visiting room at Corrigan Correctional

---

[1]  The facts are taken from the Complaint.

Institution, Assistant Attorney General Ann Lynch deposed him in connection with another federal lawsuit, *Ziemba v. Murphy, et al.*, Case No. 3:08cv1090(MRK). During the deposition, Correctional Officer Wing, who was present in the room for safety and security reasons, allegedly took a step towards the plaintiff with closed fists in an attempt to assault him. The plaintiff claims that Attorney Lynch failed to take any action to restrain or reprimand Officer Wing and refused to replace him with another Correctional Officer after this incident.

Officer Wing escorted the plaintiff back to his cell after the deposition. Before the plaintiff reached his cell, Officer Wing hit and pushed the plaintiff in the back and warned the plaintiff that if he continued to litigate his lawsuits that he would suffer harm. Later that day, the plaintiff allegedly sent letters to defendants Deputy Commissioner Strange, Warden Colletti and Commissioner Murphy regarding the alleged assaultive conduct by Officer Wing during the deposition and Officer Wing's threats after the deposition and requested that he be immediately transferred to another prison for his own safety.

On July 24, 2009, the plaintiff allegedly filed a grievance addressed to Deputy Commissioner Strange, Warden Colletti and Commissioner Murphy. In the grievance, the plaintiff described the alleged assaultive conduct by Officer Wing during the deposition and Officer Wing's threats after the deposition. The plaintiff requested that he be immediately transferred to another prison for his own safety, an investigation of the incidents be undertaken and that Officer Wing be disciplined for his conduct.

On July 28, 2009, the plaintiff allegedly sent letters to Deputy Commissioner Strange, Warden Colletti and Commissioner Murphy regarding the alleged assaultive conduct by Officer Wing during the deposition and Officer Wing's threats after the deposition. The plaintiff also

alleged that Counselor Meigs and defendants Butler and White had threatened him.  The plaintiff requested that he be immediately transferred to another prison for his own safety and that an investigation be undertaken.

On August 12, 2009, the plaintiff allegedly sent letters to Deputy Commissioner Strange, Warden Colletti and Commissioner Murphy claiming that Officer Wing had directed him to drop all of his lawsuits against the Department of Correction.  The plaintiff requested that he be immediately transferred to another prison for his own safety and that an investigation be undertaken.

On August 20, 2009, Attorney Lynch returned to Corrigan to continue the plaintiff's deposition.  The plaintiff made a statement on the record claiming that his safety was is in danger and then refused to continue with the deposition.

The plaintiff alleges that on September 1, 2009, Attorney Lynch, Captain Judd, Lieutenants Butler and White and Officers Wing and Hanney were responsible for having an order issued that he report to a lieutenant's office.  Once he reached the office, Captain Judd and Lieutenant Butler ordered the plaintiff to a secluded back room.  Captain Judd was hostile towards the plaintiff and asked whether he would drop all of his lawsuits against the Department of Correction.  When the plaintiff replied no, Captain Judd and Officers Wing and Hanney punched and kicked the plaintiff repeatedly and smashed his glasses.   Lieutenant Butler sprayed the plaintiff in the face with a chemical agent.  The plaintiff lost consciousness at times during the alleged beating.

Correctional Officers Leva, Yother, Delaney, Cowser, Bigelow, Iozzia and Koniecko arrived at the scene in response to the Code Orange initiated by a correctional employee.  These defendants either joined in the beating or failed to intercede to stop it.   After the defendants ceased assaulting the plaintiff, they applied handcuffs to the plaintiff's wrists.  The cuffs were allegedly applied so

tightly that the plaintiff's blood circulation was cut off and he suffered nerve damage.

Because the plaintiff was unable to walk, correctional employees transported the plaintiff to the medical unit via stretcher and placed him in Cell 113.   The defendants refused to properly decontaminate the plaintiff from the effects of the chemical agent.

Captain Judd, Correctional Officers Leva, Hanney, Yother, Delaney, Gingras, Cowser, Turner, Fortin, Terranova, Bigelow, Bessette, Iozzia, Koniecko, LaPlace and Nurses Evans and Ramerez applied four-point restraints to the plaintiff as he lay on the bunk in Cell 113.   They used excessive force when applying the restraints.

The plaintiff remained in restraints from 8:00 p.m. to 10:15 p.m.   The plaintiff lost consciousness during this time period.   The plaintiff claims that at some point during this time period, Captain Judd informed him that Attorney Lynch had advised correctional personnel to rough him up a little and transfer him to segregation, but things got out of hand.   He suggested that the use of force would not have occurred had the plaintiff withdrawn his lawsuits.

Nurses Ramerez and Evans were deliberately indifferent to the plaintiff's serious physical injuries as well as the emotional trauma he had suffered.  They refused to transfer the plaintiff to an outside hospital for treatment of his injuries.

On September 2, 2009, the plaintiff attempted to commit suicide by cutting his left arm with a razor blade.   Medical personnel transferred the plaintiff to the University of Connecticut Health Center for treatment of his various injuries.   The plaintiff claims that Captain Judd, Correctional Officers Leva, Hanney, Yother, Delaney, Gingras, Cowser, Turner, Fortin, Terranova, Bigelow, Bessette, Iozzia, Koniecko, LaPlace and Nurses Evans and Ramerez knew he was at risk to harm himself, but failed to take measures to prevent his suicide attempt.

The plaintiff alleges that defendants Captain Judd, Correctional Officers Leva, Hanney, Yother, Delaney, Gingras, Cowser, Turner, Fortin, Terranova, Bigelow, Bessette, Iozzia, Koniecko, LaPlace and Nurses Evans and Ramerez falsified their incident reports and other records relating to the two incidents that occurred on September 1, 2009.   Captain Judd and Correctional Officer Leva lied regarding the video-cameras used to film the incidents.  They claimed that both video-cameras had malfunctioned, but in fact one had functioned properly.

## III.   Discussion

The defendants move to dismiss on four grounds.  They argue that:  (1) the plaintiff has failed to state a claim under section 1983 against defendant Lynch; (2) the  plaintiff has failed to allege the personal involvement of defendants Murphy, Lajoie, Strange and Colletti in the alleged violations of his constitutional rights;  (3) they are entitled to qualified immunity; and (4) the negligence claims against all defendants are barred by Connecticut General Statutes § 4-165.

### A.      Absolute Immunity

The defendants contend that the claims against Attorney Lynch are barred by absolute immunity because all of the actions described in the complaint were taken in defendant Lynch's capacity as an Assistant Attorney General.   The plaintiff argues that defendant Lynch's actions are not entitled to absolute or qualified immunity because they were not closely related to her duties as counsel for the State of Connecticut Department of Correction and were divorced from the judicial process.

"Absolute immunity is of a rare and exceptional character."  *Barrett v. United States*, 798 F.2d 565, 571 (2d Cir. 1986).  In determining whether state officials are entitled to absolute immunity, Courts look at "the nature of the function performed, not the identity of the actor who

performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988).  The Supreme Court has held that state prosecutors are afforded absolute immunity for all actions arising from conduct "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  The Second Circuit has extended the absolute immunity of prosecutors to state assistant attorneys general defending civil actions against the state and state employees.  *See Barrett v. United States*, 798 F.2d 565, 569-70, 572-73 (2d Cir. 1986) (affirming, under federal law, the absolute-immunity dismissal of a defense attorney for the State of New York who "on behalf of the State of New York during the course of and in connection with ongoing litigation," had withheld certain information from the plaintiff).  An official seeking absolute immunity bears the burden of showing that such immunity is warranted for the function in question."  *Burns v. Reed*, 500 U.S. 478, 486-87 (1991).

The plaintiff claims that during his deposition held on July 14, 2009, in connection with *Ziemba v. Murphy, et al.*, Case No. 3:08cv1090(MRK), defendant Lynch failed to take any action against alleged improper conduct by defendant Wing who was present in the room in which the deposition was conducted.  In addition, during the continuation of the plaintiff's deposition on August 20, 2009, he informed defendant Lynch about threats by defendant Wing and other Department of Correction employees, but defendant Lynch took no action to investigate these allegations.

The plaintiff also claims that at some point, defendant Lynch instructed defendant Judd and other defendants to rough him up and transfer him to segregation in retaliation for his filing civil lawsuits against the Department of Correction.  The plaintiff contends that in response to this alleged instruction by defendant Lynch, on September 1, 2009, defendants Judd, Butler, Wing, and

Hanney used excessive force against him while defendants Leva, Yother, Delaney, Cowser, Bigelow, Iozzia and Koniecko looked on.

The defendants argue that the claims against defendant Lynch are barred on the basis of absolute immunity to which she is entitled as an Assistant Attorney General.   The docket sheet in *Ziemba v. Murphy, et al.*, Case No. 3:08cv1090(MRK) reflects that on June 22, 2009, defendant Lynch sought leave to depose the plaintiff on July 14, 2009, and on further dates as necessary. Defendant Lynch also requested that a correctional officer be present during the deposition for safety and security reasons.  On June 25, 2009, the Court granted the motion in all respects and noted that a correctional officer would be present at the deposition.

Deposing the plaintiff in connection with a civil lawsuit constitutes a traditional function of an advocate for the State of Connecticut Department of Correction and is part of the preparation of a case for trial.  Furthermore, defendant Wing's presence at the deposition had been authorized by the Court.  The decision of defendant Lynch to decline to replace defendant Wing with another Correctional Officer after defendant Wing allegedly took a step towards the plaintiff in a threatening manner during the deposition was made in her role as an advocate on behalf of Department of Correction defendants.  Thus, defendant Lynch is entitled to absolute immunity with regard to her conduct during the July 14, 2009 deposition of the plaintiff.

Furthermore, the plaintiff's claim that defendant Lynch failed to investigate the allegations that he made during the continuation of his deposition on August 20, 2009 regarding threats by defendant Wing and other correctional employees lacks an arguable legal basis.  Assistant Attorneys General are appointed pursuant to Conn. Gen. Stat. § 3-125 by the Attorney General of the State of Connecticut, who is an elected official.   *See* Const. art. Fourth, § 1.  The Commissioner of

8

Correction, who is appointed by the Governor, appoints employees of the Department of Correction. *See* Conn. Gen. Stat. §§ 4-6, 18-80.  The Commissioner of Correction is vested with the power to manage and supervise his or her employees.  *See* Conn. Gen. Stat. § 18-81.

Assistant Attorney General Lynch's position as counsel for the Department of Correction and its employees in civil actions filed by the plaintiff "does not vest [her] with authority to regulate or direct the way [her] clients conduct their duties."  *See Anderson v. Lynch*, Civil No. 3:00cv2414 (RNC), slip. op. at 3 (D. Conn. Jul. 23, 2001) (citing *Torascio v. Murray*, 862 F. Supp. 1482, 1495 (E.D. Va. 1994) (*rev'd on other grounds*) ("The Attorney General's interaction with the Department of Corrections is limited to providing legal services and advice."); *Feliciano v. DuBois*, 846 F. Supp. 1033, 1045 (D. Mass. 1994) (governor and attorney general have no supervisory responsibility for acts of correctional officers); *Meade v. Grubbs*, 841 F. 2d 1512, 1528 (10th Cir. 1988) (affirming dismissal of, among others, state attorney general because he had no "statutory authority over the conduct of [the] deputy sheriffs" alleged to have used excessive force)).  Because Assistant Attorney General Lynch has no supervisory authority over the conduct of other defendants and cannot be held liable for their actions, the plaintiff's claims that Attorney Lynch, as counsel for the State of Connecticut Department of Correction in civil matters, failed to take any action in response to his request for an investigation of threats made by the defendants in this action are dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The alleged instruction by defendant Lynch to harm the plaintiff in retaliation for his filing lawsuits does not constitute conduct that is intimately or closely associated with the judicial process or part of the regular advocacy functions of an assistant attorney general defending state officials in prisoner civil rights litigation.  Thus, the court concludes that defendant Lynch has not met her

burden of demonstrating that she is entitled to absolute immunity with regard to that claim. Accordingly, the motion to dismiss is granted with respect to the claims against defendant Lynch related to the July 14, 2009 deposition and denied with respect to the claims related to instruction on the use of force against the plaintiff and the claims related to the August 20, 2009 deposition is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### B.     Implausible Claims

The defendants offer a second argument for dismissal of all claims against defendant Lynch. They contend that the claims should be dismissed as implausible.

In their memorandum in support of the motion to dismiss, the defendants describe the allegation that, prior to September 1, 2009, defendant Lynch instructed defendant Judd and other defendants to rough him up and transfer him to segregation as "a most implausible event." (*See* Defs.' Mem. Support Mot. Dismiss at 6.)  The defendants contend that "[i]t stretches the bounds of credulity to allege that the correctional defendants would viciously assault the plaintiff at the request of AAG Lynch or that she would make the request or instruction in the first place, and stretches them even more to allege that defendant Judd would then so inform the plaintiff." *(See id).*

In their discussion of this argument, the defendants simply state that, based on the holding in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the allegations against defendant Lynch should be dismissed as implausible.  The defendants in effect are arguing that the claims against defendant Lynch should be dismissed because they are not to be believed or are not true.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court made it clear that in considering a motion to dismiss, a court must proceed "on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citing *Neitzke v. Williams*, 490 U.S.

319, 327 (1989) ("rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations").   Thus, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote or unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The defendants argument that the remaining claim against defendant Lynch is not plausible because it is not believable is without merit.   The court must accept the factual allegations in the complaint as true when deciding a motion to dismiss.   *See Iqbal*, 556 U.S. at 678.   The plaintiff's allegations that defendant Judd and other defendants used excessive force against him twice on September 1, 2009, in response to defendant Lynch's prior instructions to rough him up are offered in support of the plaintiff's claims that defendant Lynch was deliberately indifferent to his safety and engaged in action that constituted retaliation for plaintiff's filing lawsuits against the Department of Correction.   Accordingly, the remaining claim against defendant Lynch will not be dismissed as implausible.

### C.   Personal Involvement

Defendants Strange, Colletti, Murphy and Lajoie argue that the claims against them should be dismissed because the plaintiff has not alleged their personal involvement in the alleged use of excessive force, failure to protect him from harm, and deliberate indifference to his safety and medical and mental health needs.   The plaintiff claims that he has sufficiently alleged the involvement of these defendants.

To recover money damages under section 1983, plaintiff must show that these defendants were personally involved in the constitutional violations.   *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).   Defendants Strange, Colletti, Murphy and Lajoie are supervisory officials.   They

cannot be held liable under section 1983 solely for the acts of their subordinates.  *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show supervisory liability by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).  In addition, plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

In *Iqbal*, the Supreme Court held that a supervisor can be liable only "through the official's own individual actions."  *Id.* at 676.  That decision arguably casts doubt on the continued viability of some of the categories for supervisory liability.  The Second Circuit has yet to definitively determine "which of the *Colon* factors remains a basis for establishing supervisory liability in the wake of *Iqbal* and no clear consensus has emerged among the district courts within the circuit." *Aguilar v. Immigration and Customs Enforcement Div. of the United States*, 811 F. Supp. 2d 803, 814 (S.D.N.Y. 2011) (collecting cases).  Because it is unclear whether *Iqbal* overrules or limits *Colon*, the court will continue to apply the categories for supervisory liability set forth in *Colon*.

### 1.      Failure to Protect - Deliberate Indifference to Safety

The plaintiff alleges that, prior to the use of force against him on September 1, 2009, he sent written requests and a grievance to defendants Strange, Colletti and Murphy.   The plaintiff concedes, however, that he did not receive any responses to his letters or the grievance from any one.

The fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official.  *See Rivera v. Fischer*, 655 F. Supp. 2d 235, (W.D.N.Y. 2009) ("Numerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.") (quoting *Candelaria v. Higley*, No. 04-CV-277, 2008 WL 478408, at *2 (W.D.N.Y. Feb. 19, 2008) (citing cases).  Furthermore, the law is well established, that "a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim."  *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008) (citing cases).  Thus, a supervisory official's mere receipt of a letter or grievance complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official.  *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (prison official who received letter from inmate and forwarded it to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (allegation defendant did not respond to inmate's letters claiming lack of medical care was not enough to establish defendant's personal involvement in alleged violations); *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006) (failure of supervisory prison official to take action in response to letters complaining of unconstitutional conduct is insufficient to demonstrate personal involvement).

The fact that defendants Strange, Colletti, and Murphy failed to respond to the plaintiff's

13

letters and grievance is insufficient to demonstrate the personal involvement of these defendants in

the alleged failure to protect him from the use of excessive force by other defendants.  The motion

to dismiss is granted with respect to any failure to protect or deliberate indifference to safety claims

against defendants Strange, Colletti, and Murphy.

### 2.      Deliberate Indifference to Medical and Mental Health Needs

The plaintiff states in conclusory fashion that defendants Strange, Colletti, Murphy and

Lajoie were responsible, as supervisory officials, for the provision of medical and mental health care

to him after the alleged assaults.  There are no facts to suggest that defendants Strange, Colletti,

Murphy and Lajoie were aware of or personally involved in the alleged denial of medical and

mental health care to him for the injuries he suffered when other defendants allegedly assaulted him.

 Thus, the plaintiff has failed to state a plausible claim of deliberated indifference to his medical and

mental health needs.  The motion to dismiss is granted with respect to the medical and mental health

care claims against defendants Strange, Colletti, Murphy and Lajoie.

### 3.      Remaining Claims

 The plaintiff states that defendants Strange, Colletti, Murphy and Lajoie failed to supervise,

discipline, control and train their subordinates who were responsible for the violations of his

constitutional rights, failed to remedy wrongs, and created an unwritten policy and custom known as

the code of silence and an unwritten policy or custom to target and retaliate against inmates who file

and litigate lawsuits against the Department of Correction.  These conclusory allegations are merely

legal conclusions that are not supported by factual allegations.  *See Iqbal*, 556 U.S. at 681 (a court

need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements");  *Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal

conclusion couched as a factual allegation"; entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action") (quotation and citation omitted)..

Thus, these allegations fail to state a plausible claim upon which relief may granted and are insufficient to demonstrate the personal involvement of defendants in the alleged violations of the plaintiff's constitutional rights.  The motion to dismiss is granted with respect to all federal claims against defendants Strange, Colletti, Murphy and Lajoie.

### D.      State Law Negligence Claims

The defendants argue that the plaintiff's negligence claims are barred by the doctrine statutory immunity.  Connecticut General Statutes § 4-165(a) provides: "No state employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319, 828 A.2d 549, 561 (2003).  The motion to dismiss is granted with respect to any state law claims based on the alleged negligence of the defendants.

### E.      Qualified Immunity

Counsel for the defendants contends that defendant Lynch is entitled to qualified immunity for her actions.  Counsel has not clearly set forth her argument in the memorandum in support of the motion to dismiss.  Instead, she only includes the legal standard for establishing qualified immunity and, in a conclusory manner, states that the claims against defendant Lynch are subject to dismissal based on the law of qualified immunity.   Because counsel has not adequately briefed this argument, the motion to dismiss is denied to the extent it relies on a claim of qualified immunity.  Counsel

may renew this claim on a motion for summary judgment or at trial.

     **F.**    **Section 1986 Claim**

In addition to asserting claims under Section 1983, the plaintiff purports to file this action pursuant to 42 U.S.C. § 1986.  Section 1986 provides no substantive rights; it provides a remedy for the violation of section 1985.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part).  Thus, a prerequisite for an actionable claim under section 1986 is a viable claim under section 1985.

The first two subsections of 42 U.S.C. § 1985 clearly are not relevant to this action.  Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties and section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings.  The plaintiff is not a federal official and his claims are not related to participation of witnesses in judicial proceedings.

In order to state a claim under section 1985(3), plaintiff must allege: (1) the defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a right or privilege.  *See Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).  Importantly, the plaintiff must show that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus."  *Id.* at 102.  Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights.  *See id.* at 101-02.

The plaintiff only generally asserts that the defendants conspired to deprive him of

constitutional rights.  Furthermore, the plaintiff does not allege that the actions of any defendant

were taken because of his race or other class-based discriminatory animus.  Thus, the plaintiff fails

to state a claim cognizable under section 1985(3).  Because the plaintiff has not stated a section

1985 claim, his section 1986 claim is not actionable and is dismissed.  *See* 28 U.S.C. §

1915(e)(2)(B)(ii).

### G.    Declaratory Relief

The plaintiff seeks a declaration that the defendants violated his federal constitutional and

statutory rights as well as his rights under Connecticut law.  Declaratory relief is intended to enable

parties to adjudicate claims before either side suffers great harm.  *See In re Combustible Equip.

Assoc.*, 838 F.2d 35, 37 (2d Cir. 1988).  Declaratory relief operates prospectively.  Thus, it is

inappropriate for prior acts because damages have already accrued.  *See National Union Fire Ins.

Co. of Pittsburgh, Pa. v. International Wire Group, Inc.*, No. 02 Civ. 10338, 2003 WL 21277114,

At *5 (S.D.N.Y. June 2, 2003).  The incidents that give rise to this action took place during 2009

when the plaintiff was incarcerated at Corrigan Correctional Institution.  Any violations of the

plaintiff's rights occurred over three years ago and will be compensated by his requested monetary

damages should he prevail in this action.  The plaintiff has not described circumstances under which

a declaratory judgment will govern the parties' future interactions.  Accordingly, declaratory relief is

not appropriate.  The request for declaratory relief is dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).


### IV.    Conclusion

The Motion to Dismiss [**Doc. No. 31**] is **GRANTED** with respect to all federal claims

against defendants Strange, Colletti, Murphy and Lajoie, the claim against defendant Lynch

pertaining to the plaintiff's July 14, 2009 deposition, and the state law claims of negligence and negligent infliction of emotional distress against all defendants.  The claim against defendant Lynch pertaining to the plaintiff's August 20, 2009 deposition, the claims pursuant to 42 U.S.C. § 1986 against all defendants and the request for declaratory relief from all defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Motion to Dismiss [**Doc. No. 31**] is **DENIED** with respect to the claim against defendant Lynch that defendant Judd and other defendants used excessive force against the plaintiff on September 1, 2009 in response to her prior instruction to rough up the plaintiff and transfer him to segregation in retaliation for his filing civil lawsuits against the Department of Correction.

Accordingly, section 1983 claims remain against defendant Lynch as well as defendants Judd, Butler, White, Leva, Wing, Hanney, Yother, Delaney, Gingras, Cowser, Turner, Fortin, Terranova, Bigelow, Bessette, Iozzia, Koniecko, LaPlace, Evans and Ramerez.  In addition, the claims brought under the Connecticut Constitution as well as the state law claims of intentional infliction of emotional distress and battery remain pending against all defendants.

**SO ORDERED** this 17th day of September 2013, at Bridgeport, Connecticut.


 /s/ Stefan R. Underhill_____
STEFAN R. UNDERHILL
UNITED STATES DISTRICT JUDGE